IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

KRISTIN SHERMAN, )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO.
) 02-AR-1072-M
)
THE NATIONAL AUCTION GROUP, )
INC., )
)
    Defendant. )
)

### MEMORANDUM OPINION

    Before this court are two motions filed by defendant, The National Auction Group ("NAG"). On July 18, 2003, NAG filed a motion for summary judgment. On August 11, 2003, NAG filed a motion to strike portions of the evidentiary submissions of plaintiff, Kristin Sherman ("Sherman"), submitted in opposition to NAG's motion for summary judgment. The parties have not only submitted briefs, they have provided oral argument at the court's insistence.

    Sherman, a former employee of NAG, contends that NAG violated her rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Sherman makes three claims: (1) sexual harassment, (2) retaliatory discharge, and (3) retaliatory reference after discharge.

### Undisputed Facts

    NAG is a real estate auction company. Sherman, a female, was hired by NAG in early June 1998 as the director of Allied



Advertising, the in-house advertising unit of NAG. Her basic job responsibilities were to assist in pricing and securing advertising space, to format advertisements for auctions conducted by NAG, and to work with media in scheduling advertising for upcoming auctions. NAG fired Sherman on April 21, 1999.

Two months after her termination, Sherman applied for a job with Interaccess, Inc. ("Interaccess"). Stephen L. Wood ("Wood"), vice president of sales at Interaccess, interviewed her in June 1999. Sherman was offered a position with Interaccess contingent upon her references checking out. One of her listed references was NAG, her former employer. In July 1999, Wood and Jim Corby ("Corby"), the CEO of Interaccess, called NAG about Sherman. They spoke with Linda Webb ("Webb"), a member of junior management at NAG, and with Debbie Hawkins ("Hawkins"), another employee of NAG. Based on the alleged negative reference given by one or both of NAG's said employees during that single call, Interaccess withdrew the tentative offer its had extended to Sherman.[1]

On November 10, 1999, Sherman filed a complaint against NAG

---

[1] The parties dispute the extent of the negative reference, but it is undisputed that Webb said NAG would not rehire Sherman. This makes sense in describing an employee who had been fired not in a reduction-in-force, whatever the reason for the firing. Whether honesty is the best policy in responding to a request for a reference about a former employee is another question.

with the Equal Opportunity Employment Commission ("EEOC") alleging sexual harassment, retaliatory discharge, and a retaliatory reference. The complaint in this case was filed on April 29, 2002.[2]

## Analysis

### *Motion to Strike*

In its motion to strike, NAG argues that portions of six of the affidavits submitted with Sherman's response to the motion for summary judgment are inadmissible.[3] Because the Rule 56 motion is being decided without reference to five of the said six affidavits, the motion to strike will be denied as moot with respect to the five affidavits not being considered.

The court relies on a portion of one of the affidavits submitted by Sherman, namely, the affidavit of Wood. NAG argues that Wood's affidavit is based upon hearsay. While NAG does not point to any specific items of hearsay in the Wood affidavit, the only portion of that affidavit that is arguably hearsay is that part referring to Corby's and Wood's telephone call to NAG. Wood's affidavit states, in pertinent part: "During that call, at which I was present, [NAG] said that Kristin Sherman was an

---

[2] Sherman alleges in her complaint that she received a right-to-sue letter from the EEOC on March 28, 2002. NAG has not denied this allegation.

[3] NAG objects to the affidavits of James M. Rutledge, Jr., Susan Browning, Kristin Sherman, Don Boozer, Jerry Wayne Savage, Sr., and Stephen L. Wood.

3

unreliable employee, not trustworthy, and less than satisfactory in performance while at [NAG]." These statements are obviously not offered by Sherman to prove the truth of the matters asserted, because she undoubtedly thinks that she was reliable, trustworthy, and a satisfactory employee. Therefore, this portion of Wood's affidavit falls outside of the definition of hearsay as defined in Rule 801, Federal Rules of Evidence, so that NAG's motion to strike Wood's affidavit will be denied.

### Sexual Harassment and Retaliatory Discharge Claims

Sherman alleges that while employed she was subjected to unwanted sexual advances by NAG's founder and President, William Bone ("Bone"). She further alleges that on April 16, 1999 she confronted Bone about his said advances and on April 21, 1999 was fired in retaliation. NAG points out that Sherman is barred from bringing any sexual harassment and retaliatory discharge claims because she did not file her complaint with the EEOC within 180 days of the acts complained of as required by 42 U.S.C. § 2000e-5(e). Sherman is forced to concede that these two claims are time barred. Therefore, defendant's motion for summary judgment will be granted as to the harassment and retaliatory discharge claims.

### Retaliatory Reference Claim

The court now turns to Sherman's only other claim, namely, her claim of a retaliatory reference, which is not time barred.

The framework announced in *McDonnell Douglas* governs the proof required in a retaliation case when direct evidence is lacking. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986); see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of retaliation an employee must demonstrate (1) that she engaged in a statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the two.[4] *Donnellon*, 794 F.2d at 600-01. If plaintiff succeeds in doing this, the employer must then rebut the *prima facie* case by producing a legitimate, nondiscriminatory reason for its action. *Donnellon*, 794 F.2d at 601; see *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Community Aff. v. Burdine*, 450 U.S. 248, 254 (1981). In a retaliatory reference case, a legitimate, nondiscriminatory reason would be the truthfulness of what was said about the former employee. If the employer meets this burden, the employee is then given the opportunity to rebut by

---

[4] NAG argues that there are actually four elements to a *prima facie* case. NAG argues that in addition to the three elements set out above, plaintiff must also establish that the employer was aware of the protected activity. However, the Eleventh Circuit only requires three elements for a *prima facie* retaliation case. In fact, the case cited by NAG in support of using four elements, *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197 (11th Cir. 2001), only cites to three elements. This approach does not prejudice NAG, because whether or not the employer knew of the protected activity will necessarily be taken into account when evaluating the causal connection element of the *prima facie* case.

5

offering proof that the articulated reason is pretextual. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997); *see McDonnell Douglas*, 411 U.S. at 804; *Burdine*, 450 U.S. at 256. If the content of the reference was, in fact, false, pretext would, of course, be shown.

    NAG argues that Sherman has not established any of the three elements of a *prima facie* case. First, NAG argues that Sherman has not established that she engaged in a statutorily protected activity. Filing an EEOC complaint would, of course, be protected from retaliation, but Sherman's EEOC complaint itself complained of the retaliatory reference, so the EEOC complaint could not form a basis for the retaliation being complained of in the EEOC complaint. No other alleged retaliatory reference by NAG occurred after Sherman's EEOC complaint was filed. Complaining to a superior about workplace conduct that is proscribed by Title VII is another form of protected activity. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). This is the only protected activity that Sherman can complaining about in this case. In answer to Sherman's allegation that she complained to Bone about his sexually harassing conduct, NAG argues that Sherman has not established that she actually said anything to Bone about his conduct. In Sherman's affidavit she swears that she did complain to Bone about what he had done. Her affidavit does not reflect

6

that she reported Bone's conduct to any other supervisory employee at NAG. Bone denies ever receiving any complaints from Sherman about his conduct. Viewing Sherman's evidence in the light most favorable to her, as the court must do at the summary judgment stage, Sherman has presented sufficient evidence to show that she engaged in a statutorily protected activity. It may seem strange that a female employee's rejection of advances from her male boss is always protected by Title VII, whether reported by the victim to anyone other than the alleged harasser, but that is apparently what Title VII contemplates. An employer simply cannot knowingly take an adverse action against an employee who resists sexual overtures from a supervisor.

But NAG argues that Sherman has not established that she was subjected to an adverse employment action. Wood says that during the call for a reference NAG informed Interaccess that Sherman was unreliable, was not trustworthy, and was unsatisfactory in the performance of her job duties. Based on this information furnished by NAG, Wood says that he withdrew his job offer. Therefore, Sherman has established, for the purposes of opposing NAG's motion for summary judgment, that she was subjected to an adverse employment action. It is not necessary for her to have been employed by NAG at the time of the adverse action.

NAG next argues that Sherman has not shown that her protected activity and the negative reference by NAG were

7

causally connected. A causal link is an essential element of any retaliation claim. Necessary for proving causation, is proof that the decisionmaker was aware of the protected activity at the time of the adverse employment action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Such awareness can, of course, be proven through circumstantial evidence as well as by direct evidence. *Goldsmith*, 996 F.2d at 1163. Close temporal proximity can constitute circumstantial evidence sufficient to create a genuine issue of fact as to the causal connection. *Brungart*, 231 F.3d at 799.

The "decisionmaker" is the individual who takes the adverse employment action. Webb was the decisionmaker here, because it was she who allegedly gave the negative reference.[5] Assuming, as the court must, that Webb acted within the scope of her employment or used the agency relationship to assist her in accomplishing retaliatory conduct,[6] Sherman must establish that Webb was actually aware of Sherman's earlier protected activity at the time the negative opinion was imparted to the prospective employer. As explained, the protected activity at issue is

---

[5] According to NAG's records, Corby and Wood also spoke briefly with Hawkins. However, the evidence before the court indicates that Hawkins referred the call to Webb and did not talk about Sherman or her performance at NAG.

[6] Sherman has not argued either one.

8

Sherman's alleged complaint to Bone, because the complaint filed with the EEOC, despite what Sherman has strangely argued, cannot form a basis for any retaliation here complained of. A cart cannot jump in front of the horse.

Sherman has provided no evidence whatsoever to suggest that Webb actually knew that Sherman had complained to Bone. This lack of evidence might not be fatal if Sherman had presented circumstantial evidence, such as the telephone call having been the day after the confrontation with Bone, to suggest a causal connection by inference. *See Brungart,* 231 F.3d at 799. However, over three months elapsed between the time of Sherman's alleged complaint to Bone about his romantic overtures and the time of the negative reference. Such a period of time, without additional evidence, cannot create a genuine issue on the question of causal connection. It is simply too tenuous to allow a jury to indulge in speculation about it. *See Wascura v. City of South Miami, Fla.,* 257 F.3d 1238, 1248 (11th Cir. 2001). It is not incumbent on NAG to produce an affidavit from Webb denying any knowledge of the protected conduct.

The only evidence that remotely could suggest any knowledge by NAG of Sherman's allegedly protected activity when the negative reference occurred is a memo drafted by Webb memorializing her conversation with Corby. According to Webb's uncontradicted memo, Corby, in his call for a reference, told

9

Webb that Sherman told him that she had already filed a sexual harassment suit against NAG. Sherman did not file her complaint with the EEOC until several months after that telephone call, and she did not file this suit until long after that. The only logical inference is that Sherman was untruthful when and if she told Corby that she had already filed suit against NAG. Sherman has not cited, and this court has not found, any authority to support the proposition that falsely telling a prospective employer that she has filed a sexual harassment suit against a previous employer is an activity protected by Title VII.

Because the case is being disposed of on summary judgment, a jury will not be called upon to decide the interesting dispute about the truth or falsity of Webb's alleged statements to Interaccess that Sherman was untrustworthy and not a good employee. If this were a jury case, another question might be: If NAG was expressing its honest opinion about Sherman, was Webb entitled to impart it in response to a request from the prospective employer, even if it was erroneous? These interesting questions need not be addressed here. They have become academic in light of the absence of proof of causal connection between the only allegedly retaliatory act and the only allegedly protected activity.

## Conclusion

By separate order, this court will grant NAG's motion for

10

summary judgment.

DONE this ___4th___ day of November, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE